UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| DR. YVOUNE KARA PETRIE, DC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VIRGINIA BOARD OF MEDICINE, *et al.* ) <br> ) <br> Defendants. ) | Civil Action No. 1:13-cv-1486 |

## PLAINTIFF'S MEMORANDUM IN RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS

Dated: March 4, 2104

Respectfully submitted,

**DR. YVOUNE KARA PETRIE, DC**

  /s/ Vincent M. Amberly
Vincent M. Amberly, Esq. (VA 48050)
AMBERLY LAW
129 Harrison Street, NE
Leesburg, VA 20176
Tel: 703-737-3545   Fax: 703-991-0770
Email: vinceamberly@yahoo.com

*Attorney for Plaintiff*
*Dr. Yvoune Kara Petrie, DC.*

# **TABLE OF CONTENTS**

PAGE

FACTUAL SUMMARY……………………………………………………………………2

LEGAL STANDARD……………………………………………………………………..6

ARGUMENT………………………………………………………………………………7

I. *YOUNGER* ABSTENTION DOES NOT AND CANNOT APPLY TO PETRIE'S CLAIMS………………………………………………………………………...7

    A. *Younger* Abstention Does Not Apply to Federal Antitrust Claims Because Federal Courts Have Exclusive Jurisdiction Over Those Claims…………………………7

    B. *Younger* Abstention Does Not Apply Here Because the Board Members Are Financially Biased………………………………………………………………9

    C. *Younger* Abstention Does Not Apply Here Because the Claims Are Broader Than the Board Decision Against Petrie………………………………………………10

    D. *Younger* Abstention Does Not Apply to the Individual Defendants or the State Claims……………………………………………………………………….11

    E. Even if *Younger* Abstention Were Permitted, It Would Not Apply to Petrie's Petrie's Claims for Prospective Relief and Damages. ………………………….11

    F. Defendants' Mischaracterize Petrie's Allegations………………………………12

II. *BURFORD* ABSTENTION DOES NOT AND CANNOT APPLY TO PETRIE'S CLAIMS…………………………………………………………………………….13

III. QUASI-JUDICIAL IMMUNITY DOES NOT PROTECT DEFENDANTS HERE..14

    A. Quasi-Judicial Immunity is Limited in Scope……………………………..14

    B. Quasi-Judicial Immunity Doesn't Apply To Federal Antitrust Cases Because There Is No Adequate State Court or State Law Remedies……………………..16

| | | PAGE |
|---|---|---|
| IV. | PETRIE HAS PROPERLY ALLEGED A CONSPIRACY | 17 |
| | A. Defendants' Argument Misunderstands the Contract, Combination, or Conspiracy Element of Section 1 of the Sherman Act | 17 |
| | B. Petrie Has Alleged Direct Evidence of an Unlawful Conspiracy | 18 |
| | C. Petrie Has Alleged That Defendant William F. Harp Participated in the Unlawful Conspiracy | 21 |
| CONCLUSION | | 21 |
| CERTIFICATE OF SERVICE | | 23 |
(see above)

# TABLE OF AUTHORITIES

Page

## CASES

*American Telephone & Telegraph Co. v. IMR Capital Corp.*,
    888 F.Supp. 221, 243 (D. Mass. 1995)..................................................14

*Andrea Theatres, Inc. v. Theatre Confections, Inc.*,
    787 F.2d 59, 62 (2d Cir. 1986)..................................................7, 9, 13

*Arizona v. San Carlos Apache Tribe of Arizona*,
    463 U.S. 545, 559-60 (1983)..................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009)..................................................6, 19

*Bell Atlantic v. Twombly*,
    550 U.S. 544, 555 (2007)..................................................6, 19

*Burford v. Sun Oil Co.*,
    319 U.S. 315 (1943)..................................................13 - 14

*Butz v. Economou*,
    438 U.S. 478, 512-13 (1978)..................................................15, 16

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800, 817 (1976)..................................................12

*Erickson v. Pardus*,
    551 U.S. 89, 94 (2007)..................................................6, 10

*Evergreen Partnering Group, Inc. v. Pactiv Corp.*,
    720 F.3d 33, 45 (1st Cir. 2013)..................................................20

*Gibson v. Berryhill*,
    411 U.S. 564, 575-77 (1973)..................................................9

*Gutstein v. McDermott*,
    554 F.Supp. 966, 970 (M.D. Pa. 1983)..................................................7

*Horwitz v. State Bd. of Med. Exam'rs*,
    822 F.2d 1508, 1513 (10th Cir. 1987)..................................................15, 16

*JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*,

    190 F.3d 775, 779 (7th Cir. 1999)..............................................................21

*Kentucky v. Graham*,
    473 U.S. 159, 167 (1985).......................................................................15

*Lee v. City of Los Angeles*,
    250 F.3d 668, 690 (9th Cir. 2001)............................................................6

*Lockheed Martin Corp. v. Boeing Co.*,
    390 F.Supp.2d 1073, 1076, 1084 (M.D. Fla. 2005)...................................6

*Metropolitan Hosp. v. Thornburgh*,
    667 F.Supp.2d 208, 214 (E.D. Pa. 1987).............................................7, 8

*Miller v. Granados*,
    529 F.2d 393, 395 (5th Cir. 1976).............................................................7

*Mireles v. Waco*,
    502 U.S. 9, 11 (1991)..............................................................................15

*North Carolina State Board of Dental Examiners v. Federal Trade Commission*,
    717 F.3d 359 (4th Cir. 2013).............................................................12, 19

*Parker v. Brown*,
    317 U.S. 341, 351 (1943).......................................................................13

*Pulliam v. Allen*,
    466 U.S. 522, 541-42 (1984)..............................................................15 - 16

*Raitport v. Provident Nat'l Bank*,
    451 F.Supp. 522, 526 & 538 (E.D. Pa. 1978)..........................................16

*Robertson v. Sea Pines Real Estate Companies*,
    679 F.3d 278, 289 (4th Cir. 2012)...........................................................20

*Simopoulos v. Virginia State Board of Medicine*,
    644 F.2d 321, 324 (1981)....................................................................8 – 11

*Ticket Center, Inc. v. Banco Popular De Puerto Rico*,
    399 F.Supp.2d 79, 85 (D. Puerto Rico 2005)....................................8, 9, 13

*Turner v. Houma Mun. Fire and Police Civil Service Bd.*,
    229 F.3d 478, 481 (5th Cir. 2000)............................................................15

*United Broth. Of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*,
    463 U.S. 825, 827 (1983).........................................................................21

*United States v. Blue Cross Blue Shield of Michigan*,
   809 F.Supp.2d 665, 678 (E.D. Mich. 2011)..................................................13

*Vanhorn v. Oelschlager*,
   502 F.3d 775, 778 (8th Cir. 2007).............................................................14

*Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia*,
   624 F.2d 476, 485 (4th Cir. 1980).............................................................19

*West Penn Allegheny Health System, Inc. v. UPMC*,
   627 F.3d 85, 99 (3d Cir. 2010).................................................................19

*Wooley v. Maynard*,
   430 U.S. 705, 710 (1977)...................................................................11 – 12

*Younger v. Harris*,
   401 U.S. 37 (1971).............................................................................7 – 12

## STATUTES

15 U.S.C. § 1...........................................................................................17

15 U.S.C. § 15.....................................................................................7, 16

## RULES

Fed. R. Civ. P. 8(a)....................................................................................6
Fed. R. Civ. P. 12(b)(6).............................................................................6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DR. YVOUNE KARA PETRIE, DC., )
 )
Plaintiff, )
 )
v. )
 ) Civil Action No. 1:13-cv-1486
VIRGINIA BOARD OF MEDICINE, *et al.* )
 )
Defendants. )

## PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS

This is a case about whether a group of medical doctors have the right—without regard to Virginia law—to shut out competitors like chiropractors from treating certain patients. The Virginia Board of Medicine (the "Board") is dominated by medical doctors with their own private interests. The individual medical doctors satisfied these private interests by using their collective power on a board to exclude an entire category of competitor. Indeed, the Board members took several distinct actions to limit the ability of increasingly popular complimentary and alternative medicine practitioners from earning further market-share from traditional medical providers like medical doctors. The Board members and their like benefit, but Virginia patients face higher prices, lower quality and fewer choices.

Another victim of Defendants' anticompetitive conduct is plaintiff Dr. Yvoune Kara Petrie, DC, a highly-educated Virginia doctor of chiropractic that takes a research-based functional approach to her patients' well-being. She was, in a sense, caught in the cross-hairs of Defendants' anticompetitive exclusion, and they made an example of her to deter others from competing for "their" patients. They confiscated her license, fined her $25,000, and issued terms

to restore her license that are so draconian that she—as a doctor of chiropractic—can't even treat "pain" by any means or method. These competitors harnessed their power to take these actions against her not because she harmed anyone or was any sort of threat, but because she treated patients in the same way that chiropractors in other states treat patients: by utilizing a low-level laser for certain treatments, by counseling patients on diet and lifestyle, and by ordering and interpreting medical tests. Petrie and those like her, in fact, threatened the pocketbooks of the traditional medical establishment. Facing competitors with increasing success and substantially lower costs, the medical doctors on the Virginia Board of Medicine fulfilled the long-standing mission of the American Medical Association to stamp out any competitive threats from chiropractors and others. (First Amended Complaint ¶¶ 24-31) ("FAC ¶ __")

Defendants inferentially acknowledge the strength of Petrie's antitrust case by focusing almost entirely on trying to convince this Court not to hear it on the merits. That is because they know the case is rock-solid. This Court should reject their attempts to delay justice. Defendants' primary arguments focus on two discrete forms of abstention doctrine: *Younger* and *Burford* abstention. The problem, however, is that neither of these doctrines apply to a federal antitrust claim because federal courts have exclusive jurisdiction over these claims. Their third argument—quasi-judicial immunity—on its own terms could apply at best to a minute portion of this case, and, in any event, similar to their abstention arguments, isn't appropriate here. And their final argument is curious in that it attacks the conspiracy element of the antitrust claim in a case where the alleged agreements and collective action are public, not hidden. Each of these arguments fail.

## FACTUAL SUMMARY

Dr. Yvoune Kara Petrie, D.C. received her Virginia chiropractic license on July 12, 2006

2

and until recently offered her patients an alternative approach to health and well-being than traditional medical practice. (FAC ¶ 35). The form of chiropractic that she practices incorporates both functional neurology and functional medicine under the name "Virginia Functional Medicine" in Vienna, Fairfax County. (FAC ¶ 36).

Petrie truthfully advertised her practice through various media outlets in the fields of chiropractic functional medicine and neurology directed at alleviating the underlying causes of neuropathies, autoimmune conditions, Type II diabetes, thyroid and other debilitating health conditions in her patients. *Id.* She sought to address these underlying causes by counseling her patients on specific and targeted lifestyle changes and through the prescription of vitamins, minerals and other supplements in appropriate cases. Petrie also truthfully advertised a low-level laser device known as a *Zerona Laser* to prospective patients as an effective tool for body contouring, which is freely used by chiropractors in other states and is not prohibited under Virginia law. (FAC ¶¶ 74-77).

Petrie, like other Virginia chiropractors, has served as a primary-care physician, or as a patients' point of primary care for their health insurers. Traditionally, medical doctors have served as primary-care physicians, and many of these medical doctors resent chiropractors and other types of doctors who have threatened their virtual monopoly on access to primary-care patients. *See* (FAC ¶¶ 1–9, 24–34).

Defendant Virginia Medical Board is a quasi-public and quasi-private agency that regulates the practice of Medicine, Podiatry, Osteopathy and Chiropractic, among other branches of the healing arts in Virginia. (FAC ¶ 11). Medical doctors and other chiropractic competitors

dominate the Board.[1] Petrie named these doctors as defendants in both their individual capacity as actual and potential competitors with each other and Petrie, and in their official capacity as Board members. (FAC ¶ 19).

Historically medical doctors throughout the United States have spearheaded attacks on chiropractors, or doctors of chiropractic, and any specialty medical practices that they deemed threatening, through the American Medical Association ("AMA"). (FAC ¶¶ 24 – 34). In fact, Petrie provides background as to why Defendants are in an ideal position to limit the scope of chiropractic, including the financial incentives for taking such anticompetitive actions. *Id.* She also explains why medical doctors view doctors of chiropractic as a competitive threat. *See* (FAC ¶¶ 81 – 89).

In Virginia, the Board and Individual Defendants are colluding to exclude doctors of chiropractic and other non-medical doctors from competing in several relevant product and geographic markets. (FAC ¶¶ 92-114). For example, Defendants conspired to restrain Petrie and other chiropractors from (1) using a Class II Low-Level Laser device, despite its ubiquitous use by chiropractors throughout the country; (2) treating—in any way—the underlying causes of Type II diabetes, thyroid disease, metabolic disease, and other conditions, even though nothing in Virginia law forbids this competition; and (3) ordering medical tests or conducting examinations, even though these are routine practices for chiropractors in other states. (FAC ¶¶ 99-114). Defendants, outside of adjudications of Petrie, have also forbidden chiropractors from performing physical examinations for commercial driver's licenses ("Department of

---

[1] The competing doctors who participated in the Board's anticompetitive conduct include individual defendants J. Randolph Clements, DPM (FAC ¶ 12), Kamlesh Dave, MD (FAC ¶ 13), Siobhan Dunnavant, MD (FAC ¶ 14), William Harp, MD (FAC ¶ 15), Jane Piness, MD (FAC ¶ 16), and Wayne Reynolds, DO (FAC ¶ 17) (hereafter "Individual Defendants").

4

Transportation") exams, even though these are routine practices by chiropractors in other states. (FAC ¶ 112). Defendants have conspired to interfere with and boycott Petrie and other chiropractors' business by advising third-party clinical laboratories not to do business with Virginia Chiropractors, including plaintiff. (FAC ¶ 114). Defendants engaged in this conduct jointly and publicly as competitors with each other and competitors or potential competitors with Petrie.

After several years of providing primary-care physician services to an increasing number of patients, the Board sent Petrie a letter dated February 2, 2012 that directed her to attend an Informal Conference on March 22, 2012 to enable a special committee to inquire into allegations that she may have violated certain laws and regulations governing the practice of chiropractic within the Commonwealth. (FAC ¶ 37). Later, on February 22, 2013, the Board conducted a formal hearing, and issued an Order on February 28, 2013 suspending Petrie's chiropractic license for a 6-month period and imposed on her a monetary penalty of $25,000 among other punitive measures, including severe limitations on her practice following restoration of her license. (FAC ¶ 41-45). For example, she could no longer treat "pain" by any means or method. (FAC ¶ 44).

The Virginia Court of Appeals is reviewing the Board's formal order through the highly deferential and limited in scope review provided by the Virginia Administrative Process Act. Va. Code § 54.1-2400. Petrie cannot and is not pursuing her claims of anticompetitive harm against Defendants in this limited Virginia Process Act review. Nor can she pursue any claims relating to the conduct separate from the Board's adjudication that she raises here. She filed an original antitrust Complaint against The Virginia Board of Medicine on December 3, 2013. She then filed a First Amended Complaint on February 2, 2014, adding the Individual Defendants in their

individual and official capacities, and adding three separate claims for relief under Virginia law arising from Defendants' interference with her existing contracts, prospective contracts, and prospective economic advantage. Defendants do not challenge any of the state claims.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), that provides a defendant with "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The complaint need contain "only enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must accept as true all of the factual allegations in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity . . . ."). And a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. Rule 12(b)(6) dismissals are disfavored in antitrust actions. *Lockheed Martin Corp. v. Boeing Co.*, 390 F.Supp.2d 1073, 1076, 1084 (M.D. Fla. 2005).

Finally, although certain public documents are subject to judicial notice, findings or statements within those documents are not subject to judicial notice: "When a court takes judicial notice of another court or agency's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

# ARGUMENT

## I. *YOUNGER* ABSTENTION DOES NOT AND CANNOT APPLY TO PETRIE'S CLAIMS.

### A. *Younger* Abstention Does Not Apply to Federal Antitrust Claims Because Federal Courts Have Exclusive Jurisdiction Over Those Claims.

Defendants' primary argument suffers from a fatal flaw: *Younger* abstention simply doesn't apply to federal antitrust claims because federal courts have exclusive jurisdiction over these claims. 15 U.S.C. § 15; *Miller v. Granados*, 529 F.2d 393, 395 (5th Cir. 1976) (holding that "it is obvious" that *Younger* abstention cannot apply to a federal antitrust claim because federal antitrust relief "cannot be obtained in a state court"); *Metropolitan Hosp. v. Thornburgh*, 667 F.Supp.2d 208, 214 (E.D. Pa. 1987) (holding that *Younger* abstention cannot apply to federal antitrust claims because "plaintiffs could not raise these claims before the commonwealth court"). *Gutstein v. McDermott*, 554 F.Supp. 966, 970 (M.D. Pa. 1983) (explaining that defendants did not seek *Younger* abstention on "claim based upon federal antitrust law, which cannot be pursued in a state court").

Defendants' misunderstanding of *Younger* abstention likely arises from their focus on the typical case involving constitutional challenges in federal court. That is why Defendants describe one of the elements of a *Younger* defense as whether "Plaintiff has adequate opportunity to raise constitutional issues." (Defendants' MTD Brief 10) That certainly doesn't make sense here, where Petrie doesn't seek constitutional relief in federal court.

That aspect of the *Younger* test—and abstention more generally—is actually stated more broadly—"whether the state court has broad and comprehensive concurrent jurisdiction to adjudicate the claims asserted in the federal action." *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 62 (2d Cir. 1986). This explains why "abstention is clearly

7

improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts." *Id.*; *Ticket Center, Inc. v. Banco Popular De Puerto Rico*, 399 F.Supp.2d 79, 85 (D. Puerto Rico 2005) ("[F]ederal courts do not have discretion to abstain from deciding federal antitrust issues pending resolution of a state suit between the same parties and involving the same transactions."); *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 559-60 (1983) (explaining that abstention "would have been improper if there was no jurisdiction in the concurrent state actions to adjudicate the claims at issue in the federal suits"); *see also Simopoulos v. Virginia State Board of Medicine*, 644 F.2d 321, 324 (1981) (explaining that *Younger* abstention applies "when relief sought by a plaintiff in a federal action is available" in a pending state proceeding).

Permitting abstention for exclusive federal claims would "run counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims." *Andrea Theatres*, at 63. Indeed, *Younger* abstention is unavailable for federal antitrust claims even if a plaintiff presents claims in a state judicial proceeding "arguably arising from the same conduct."[2] *Metropolitan Hosp.*, 667 F.Supp. 208, 214 (E.D. Pa. 1987). The Second Circuit explained, for example, that even though a state court may properly consider federal claims raised as defenses, "they may not grant affirmative relief

---

2    Defendants assert that Petrie included restraint of trade arguments in her state appellate claims. (Defendants' MTD Brief 9 n. 7). Petrie's previous counsel incorrectly referenced a restraint of trade in Petrie's Petition for Appeal in State Court, (Defendants' MTD Brief, Exhibit C), but that is not within the scope of review under the Virginia Administrative Process Act, and the state trial court ignored it. (Defendants' MTD Brief, Exhibit D). Petrie did not include any restraint of trade arguments in her State Appellant's Brief. (Defendants' MTD Brief, Exhibit G). In any event, even if Petrie had properly included an antitrust defense in the state action, *Younger* abstention is still unavailable because federal courts have exclusive jurisdiction over federal antitrust claims.

8

based on claims for which federal jurisdiction is exclusive," so abstention is improper. *Andrea Theatres*, 787 F.2d at 63; *Ticket Center*, 399 F.Supp.2d at 86 (holding that even if "all the pending state and administrative proceedings somehow deal with exactly the same claims and issues brought in the present [antitrust] complaint, the prevailing party would still have to return to federal court to seek affirmative relief," so abstention is unavailable).

### B. *Younger* Abstention Does Not Apply Here Because the Board Members Are Financially Biased.

Even if *Younger* abstention could apply to federal antitrust claims, it would not apply here because Petrie alleges that the Board and Individual Defendants were biased in their dealings with her. *See Gibson v. Berryhill*, 411 U.S. 564, 575-77 (1973) (holding that *Younger* abstention does not apply where state proceeding involves review of licensing board determination and the board members were biased). In such a case, the "predicate for a *Younger v. Harris* dismissal [is] lacking." *Id.* at 577. And it doesn't matter if "judicial review, de novo or otherwise, [is] forthcoming at the conclusion of the administrative proceedings." *Id.*; *Simopoulos*, 644 F.2d at 326 (acknowledging that Supreme Court precedent precluded *Younger* where the administrative board is biased, which thereby denies "plaintiff a fair state administrative tribunal").

The *Gibson* Court explained that administrative remedies are inadequate "where the state administrative body was found to be biased or to have predetermined the issues before it." *Id.* at 575 n.14. Petrie alleges that here: the majority of the Board that acted against her were competitors or potential competitors with pecuniary interests to limit the scope of chiropractic to avoid competition. (FAC ¶¶ 34, 48). As the Supreme Court explained in *Gibson*, it "is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Id.* at 579. Defendants might try to argue in

9