their Reply brief that the Board members were not biased, but for purposes of a motion to

dismiss, the factual allegations in the complaint control. *Erickson*, 551 U.S. at 94.

**C.    *Younger* Abstention Does Not Apply Here Because the Claims Are Broader Than the Board Decision Against Petrie.**

Defendants' *Younger*-abstention argument presumes that Petrie's claims are based

entirely upon the Board members' decision to sanction Petrie following a formal hearing.

(Defendants' MTD Brief 1, 7). That, however, is just one component of Defendants' overall

scheme to restrain trade in the relevant markets. For example, Petrie alleges that (1) Defendants

also prohibited chiropractors from offering Department of Transportation Exams, even though

chiropractors in other states do so, (2) Defendants interfered with her (and other chiropractors')

ability to order appropriate and legally permitted tests for their business through third-party

testing facilities; (3) and Defendants violated their own posting policies to hasten an avalanche of

third-party claims against Petrie. (FAC ¶¶ 72, 112-14, 123, 128). *See Simopoulos*, 644 F.2d at

324 (*Younger* abstention doesn't apply where federal plaintiff's claim could not be resolved in

pending state proceeding).

Petrie's antitrust and state-law claims, in fact, implicate Defendants' conduct before,

after, and separate from the Board members' decision arising out of the formal hearing. The

administrative hearing and its subsequent state review, of course, involve only the formal-

hearing decision, and not Defendants' other restraints of trade, or interferences with Petrie's

contracts, prospective contracts, and prospective economic advantages. (FAC ¶¶ 72, 112-14, 123,

128). Thus, if this Court decides to abstain, neither this Court not the state courts will review this

conduct.

**D.** **_Younger_ Abstention Does Not Apply to the Individual Defendants or the State Claims.**

Even if _Younger_ could apply to federal antitrust claims, or where plaintiff alleges the deciding board members were biased, or to conduct beyond that adjudicated and reviewed in a parallel state proceeding, it would have limited scope here anyway because Petrie alleges claims against doctors in their individual capacity as competitors, in addition to claims against the board itself and the board members in their official capacity.

That is, Petrie alleges that certain individual board members violated the antitrust laws not merely because they are members of a board that took illegal action—the typical scenario where a plaintiff names administrative board members as defendants. Instead, Petrie alleges that the Individual Defendants restrained trade and committed torts against her in their role as competitors and prospective competitors. What makes their conduct a violation of the antitrust laws is the fact that they are competitors not that they are board members. They merely used their position on the Board as a tool to help them restrain trade. Thus, even if _Younger_ abstention could apply, the lawsuit against the individual board members, in their individual capacity, would survive.

In addition, Petrie's state law claims against the Individual Defendants involve conduct that is separate and apart from the Board activity that is on review in state court. So those claims would additionally survive any abstention stay.

**E.** **Even if _Younger_ Abstention Were Permitted, It Would Not Apply to Petrie's Claims for Prospective Relief and Damages.**

_Younger_ abstention—when it can apply—is limited to injunctive relief and certain declaratory relief. _Wooley v. Maynard_, 430 U.S. 705, 710 (1977) (_Younger_ precludes federal courts from exercising certain "equitable jurisdiction to enjoin ongoing state prosecutions"); _Simopoulos_, 644 F.2d at 331. But the Supreme Court specifically held in _Wooley_ that _Younger_

11

abstention does not extend to federal requests for prospective equitable relief to, for example, "preclude further prosecution" that violates a plaintiff's rights. *Id. Wooley*, 430 U.S. at 712.

Here, Petrie specifically seeks prospective relief unrelated to the proceedings reviewed by the state court, as well as damages resulting from Defendants' anticompetitive and tortious conduct. For example, Petrie requests that this Court "enjoin Defendants from limiting the scope of chiropractic practice beyond the limitations provided under Virginia law," and from "taking further action, outside of their adjudicatory role, from deterring and preventing chiropractors from practicing chiropractic as permitted by Virginia law." (FAC, Prayer for Relief ¶¶ 2-6). Thus, even if this Court could apply *Younger* abstention, it would only serve to stay a small portion of this case.

### F.     Defendants' Mischaracterize Petrie's Allegations.

Finally, Defendants craft certain mischaracterizations of Petrie's allegations into their abstention arguments. For example, Defendants' assert, without support, that Petrie's antitrust claim is a "mere façade for a collateral attack on the Board's Order." (Defendants' MTD Brief at 11). This argument is incorrect.

Here, Petrie presents strong and serious federal antitrust claims with great similarity to claims affirmed less than a year ago by the Fourth Circuit in *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 717 F.3d 359 (4th Cir. 2013). Indeed, with the exception of a throw-in last argument that misunderstands antitrust-conspiracy requirements, Defendants do not challenge the substance of Petrie's claims. (Defendants' MTD Brief 15-18). Federal courts have a "virtually unflagging obligation" to "exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). Thus, Defendants' unsupported rhetoric is insufficient to permit abstention in these circumstances.

12

Defendants also incorrectly assert that Petrie attacks the statutes that govern the practice of chiropractic and that "Plaintiff does not agree with the scope of practice enacted by the General Assembly." (Defendants' MTD Brief at 11, 13). But, in fact, Petrie alleges that the Defendants' actions and agreement have no grounding in Virginia law; instead, Individual Defendant competitors are utilizing their power on the Board to artificially and illegally limit the jurisdictional scope of competitors like chiropractors, without regard to actual Virginia law. (FAC ¶¶ 99-114).

## II.    *BURFORD* ABSTENTION DOES NOT AND CANNOT APPLY TO PETRIE'S CLAIMS.

Defendants' second argument asks this Court to apply the "narrowly circumscribed" *Burford* abstention doctrine to stay this case. (Defendants' MTD Brief 12-14); *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943); *Ticket Center,* 399 F.Supp.2d at 84.

Just like *Younger* abstention, *Burford* abstention cannot apply to federal antitrust claims, as federal courts have exclusive jurisdiction over those claims. *United States v. Blue Cross Blue Shield of Michigan,* 809 F.Supp.2d 665, 678 (E.D. Mich. 2011) ("The United States' only forum for enforcing federal antitrust laws is in the federal district court, which has exclusive jurisdiction under Sherman Act claims. [] This section precludes *Burford* abstention.") (citing *Andrea Theatres,* 787 F.2d at 63); *Ticket Center,* 399 F.Supp.2d at 85 ("[F]ederal district courts do not have discretion to abstain from deciding federal antitrust issues pending resolution of a state suit between the same parties and involving the same transactions" because "federal district courts have exclusive jurisdiction over private federal antitrust cases.").

Indeed, a separate doctrine developed in 1943 called the state-action immunity doctrine to balance the state-sovereignty issues with the federal antitrust laws. See *Parker v. Brown,* 317 U.S. 341, 351 (1943). Defendants, of course, sensibly do not assert state-action immunity here.

In any event, the existence of "the state action doctrine" makes "application of the *Burford* abstention doctrine superfluous" in an antitrust case. *American Telephone & Telegraph Co. v. IMR Capital Corp.*, 888 F.Supp. 221, 243 (D. Mass. 1995).

Finally, although not relevant in light of *Burford* abstention's inapplicability to federal antitrust claims, Defendants overstate the implications of this case on the Board's ability to regulate licenses. (Defendants' MTD Brief at 13-14). Petrie's antitrust claims are actually quite narrow: they challenge the ability of a group of competitors to implement agreements outside of law to restrain their competitors—like chiropractors in this case—from competing with them. (FAC ¶¶ 99-114). Cases, for example, that involve violations of existing law or standards within a profession are unaffected. It is only when individual competitors combine to exclude competition that federal antitrust policy intercedes.

## III.   QUASI-JUDICIAL IMMUNITY DOES NOT PROTECT DEFENDANTS HERE.

### A.   Quasi-Judicial Immunity is Limited in Scope.

Defendants' overstate the possible scope of quasi-judicial immunity by stating—without reservation—that it applies to "The Board, its members, and employees." (Defendants' MTD Brief 14). But—even in the best case scenario for Defendants—it cannot apply to (1) claims against Board members in their official capacity; (2) claims against the Board itself; (3) claims for injunctive relief; (4) claims unrelated to board-member adjudicatory functions, and (5) attorneys' fees.

Petrie sued Individual Defendants in both their individual capacities as competitors and their capacities as members of the Virginia Medical Board. Even if quasi-judicial immunity did apply here, it is unavailable as a matter of law to Defendants in their official capacities. *See, e.g., Vanhorn v. Oelschlager*, 502 F.3d 775, 778 (8th Cir. 2007) ("[T]his court's precedent, Supreme Court precedent, and case law from our sister circuits make clear that absolute, quasi-judicial

immunity is not available for defendants sued in their official capacities."); *see also Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

Similarly, the Board itself cannot assert quasi-judicial immunity. *Turner v. Houma Mun. Fire and Police Civil Service Bd.*, 229 F.3d 478, 481 (5th Cir. 2000) (explaining that "there is no absolute quasi-judicial immunity defense available to the Board or its members sued in their official capacity").

Quasi-judicial immunity also only applies to actions for damages; it is "not a bar to injunctive relief" against Defendants "for actions taken" in their official capacities. *Horwitz v. State Bd. of Med. Exam'rs*, 822 F.2d 1508, 1513 (10th Cir. 1987); *see also Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) ("[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.").

Quasi-judicial immunity also does not, of course, apply to aspects of Petrie's antitrust claims—and state claims—that reach beyond the Board's quasi-judicial functions. *Butz v. Economou*, 438 U.S. 478, 512-13 (1978) (quasi-judicial immunity applies when state officials are functionally performing adjudicatory functions); *Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[A] judge is not immune from liability for non-judicial actions."). Petrie, for example, alleges the following non-adjudicatory conduct: (1) Defendants prohibited chiropractors from offering Department of Transportation Exams, even though chiropractors in other states do so, (2) Defendants interfered with her (and other chiropractors') ability to order appropriate and legally permitted tests for their business through third-party testing facilities; (3) and Defendants violated their own posting policies to hasten an avalanche of third-party claims against Petrie. (FAC ¶¶ 72, 112-14, 123, 128).

Finally, quasi-judicial immunity is not a bar to Petrie recovering attorneys' fees against Defendants. *Pulliam*, 466 U.S. at 543-44 (explaining that absent contrary legislative language, judicial immunity does not bar statutory attorneys' fees). The federal antitrust laws expressly permit Petrie to recover reasonable attorneys' fees. 15 U.S.C. § 15(a).

In conclusion, even if quasi-judicial immunity could apply in this case, the application would be so narrow that it wouldn't have any effect until later in the proceedings when this Court is determining the appropriate remedy. Thus, granting any sort of dismissal based upon quasi-judicial immunity at this stage is improper.

**B.    Quasi-Judicial Immunity Doesn't Apply To Federal Antitrust Cases Because There Is No Adequate State Court or State Law Remedies.**

Similar to abstention, quasi-judicial immunity doesn't apply to Petrie's antitrust claims here. *See Raitport v. Provident Nat'l Bank*, 451 F.Supp. 522, 526 & 538 (E.D. Pa. 1978) (analyzing application of quasi-judicial immunity to civil-rights claims, but not antitrust claims). This immunity developed to protect judges and those performing judge-like functions from federal constitutional claims arising out of the "process" of judging. *Butz*, 438 U.S. at 511-12. The Supreme Court explained that the doctrine is supported by "safeguards built into the judicial process [that] tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." *Id.* at 512 (emphasis added); *see also Horwitz*, 822 F.2d at 1515 ("There exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance upon private damages lawsuits.") (emphasis added). Once again, Petrie is not alleging federal constitutional claims, but federal antitrust claims that she must file in federal court. Unlike a federal constitutional claim, the state process does not contain adequate safeguards to protect against violations of federal antitrust law.

16

Moreover, in this case, Petrie sued the Individual Defendants in their individual capacity—the only capacity that is even relevant to the quasi-judicial immunity question—because they are competitors or potential competitors that combined to restrain trade. (FAC ¶¶ 12-19). This is not the typical constitutional case where a disappointed party sues the members of an administrative board—merely because they are on the board—for violating procedures in deciding against her. Instead, this is a case where horizontal competitors utilized market power to combine to restrain trade, which injured Petrie. State adjudicatory procedures do not protect against that harm that is the province of the federal antitrust laws, which federal courts exclusively enforce.

## IV.   PETRIE HAS PROPERLY ALLEGED A CONSPIRACY.

### A.   Defendants' Argument Misunderstands the Contract, Combination, or Conspiracy Element of Section 1 of the Sherman Act.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Defendants' sole argument challenging Petrie's antitrust claim[3] is that Petrie has failed to allege a contract, combination, or conspiracy among Defendants. But Defendants support that conclusion with a number of premises that are unrelated to conspiracy-pleading requirements. (Defendants' MTD Brief 15-18). Indeed, Defendants focus more on debating certain facts Petrie pleads than addressing whether Petrie has alleged a contract, combination, or conspiracy among Defendants.

Defendants, for example, build a straw-man argument of four categories of allegations that they claim Petrie alleges to support the conspiracy element of her antitrust claim.

---

[3]   Defendants do not dispute that Petrie has sufficiently alleged tort claims against Defendants.

(Defendants' MTD Brief 16-17). But these categories are not necessary (or in many instances even relevant) to satisfying the conspiracy element. They are non-sequiturs. For example, Defendants state that Petrie claims "(1) that by virtue of simply practicing their professions, medical doctors, osteopaths, and doctors of podiatry have an interest in conspiring against chiropractors," and (3) that these same doctors "have a financial interest in regulating chiropractors." (Defendants MTD Brief 16).

Neither of these allegations, however, matter to the question of whether Petrie has alleged a contract, combination or conspiracy among Defendants. Individual Defendants have a horizontal relationship as competitors, and are competitors or potential competitors with Petrie, but that is relevant to the per se nature of the antitrust violation, which Defendants do not (for good reason) dispute. Indeed, for that issue, it doesn't even matter whether they have any bias. What matters is that they entered an agreement, jointly, which restrained trade.

The other two categories are equally curious: it doesn't matter, for example, to the antitrust claim's conspiracy element whether the Board (or conspiracy) included one or more chiropractic or public members. (Defendants' MTD Brief 16-17). Horizontal conspirators cannot immunize themselves from antitrust liability by including one or more non-competitors in their scheme. So whether one or more citizen members went along with the competitors on the Board is irrelevant to whether the Individual Defendants participated in a contract, combination or conspiracy. That, in fact, is a simple question in this case.

## B.     Petrie Has Alleged Direct Evidence of an Unlawful Conspiracy.

Petrie alleges direct evidence that Defendants entered into a "contract, combination, or conspiracy." In fact, Defendants themselves attached one of the agreements to their motion to dismiss—the Board's February 28, 2013 Order (consented to by Individual Defendants and the Board itself). (Defendants' MTD Brief, Exhibit A). Individual Defendants participated in the

hearing and following the hearing entered an undisputed agreement to restrict Petrie and other chiropractors from competing with medical doctors and others in the alleged relevant markets. (FAC ¶¶ 41-45, 99-114). Petrie also alleges other acts that were implemented by the Board itself through the Individual Defendants. (FAC ¶¶ 72, 112-14, 123, 128)

The Fourth Circuit, in a similar case, held that state professional-board action to restrict competition is direct evidence of conspiracy. *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 717 F.3d 359, 373 (4ᵗʰ Cir. 2013) (concluding that the following is direct evidence of conspiracy: "the Board discussed teeth whitening services provided by non-dentists and then voted to take action to restrict these services."). Similarly, Petrie here alleges that several competitors joined together and took collective action to limit the ability of would-be competitors—chiropractors—from competing for certain business. Regardless of whether defendants view their actions as justified, Petrie has alleged direct evidence of a "contract, combination, or conspiracy" among Defendants. Summary judgment and trial will test the legality of the actions. *See Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia*, 624 F.2d 476, 485 (4ᵗʰ Cir. 1980) (explaining that the Fourth Circuit is "not inclined to condone anticompetitive conduct upon an incantation of 'good medical practice.'").

Defendants assert *Twombly/Iqbal* objections that seem to assume Petrie is alleging a conspiracy based upon mere parallel conduct or circumstantial evidence. (Defendants' MTD Brief 15-18). But that analysis is superfluous when an antitrust plaintiff included direct evidence of agreement: "If a complaint includes non-conclusory allegations of direct evidence of an agreement, a court need go no further on the question whether an agreement has been adequately pled." *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010).

Defendants' motive for challenging this element of the antitrust claim is unclear, as the

Individual Defendants (and the Board) publicly acted together. The *Twombly/Iqbal* analysis is

typically reserved for the situations where competitors secretly coordinated their pricing or other

behavior, and the actual agreements are hidden, and certainly not—like here—public documents.

*Robertson v. Sea Pines Real Estate Companies*, 679 F.3d 278, 289 (4th Cir. 2012) (explaining

that the circumstantial evidence test is superfluous in light of direct evidence of the agreement

itself). In *Robertson*, the Fourth Circuit faced a similar inquiry, where defendants that made up

the board of a multiple listing service argued under *Twombly* and *Iqbal* that plaintiffs failed to

allege a conspiracy, even though—like here—there is "no such uncertainty [] about the terms of

the agreement, let alone whether one was made." The Fourth Circuit quickly dismissed

defendants' arguments, explaining that "Conspiracies are often tacit or unwritten in an effort to

escape detection, thus necessitating resort to circumstantial evidence . . . , [but] [h]ere, by

contrast, the concerted conduct is both plainly documented and readily available so that plaintiffs

can describe the factual content of the agreement without the benefit of extended discovery." *Id.*

at 289-90. The same is true in this case.

In any event, Petrie has additionally met the circumstantial-pleading standard, which

merely requires sufficient facts to show that it is "plausible" that Defendants entered a "contract,

combination, or conspiracy." *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 45

(1st Cir. 2013) (detailed discussion of the present state of antitrust pleading standards).

Individual Defendants here are horizontal competitors or potential competitors that directly

control the Board's actions. (FAC ¶¶ 12-19) Petrie alleges that the Board, through the Individual

Defendants, engaged in certain conduct that restrained trade. Indeed, Petrie alleges that these

Defendants specifically and publicly not only participated in the Board, which took these actions,

20

but additionally voted for them. (FAC ¶ 48). It is thus plausible that Individual Defendants and

the Board entered into a "contract, combination, or conspiracy."

    C.    **Petrie Has Alleged That Defendant William F. Harp Participated in the Unlawful Conspiracy.**

    Defendants argue that Petrie has failed to state a claim against Dr. William F. Harp, MD

because he is Executive Director of the Board rather than a voting member of the Board.

(Defendants' MTD Brief 18). Dr. Harp, however, is a horizontal competitor of other Individual

Defendants—and a competitor or potential competitor of Petrie—that participated in the

conspiracy in his capacity as Executive Director. (FAC ¶¶ 15, 18) Indeed, he played a crucial

role in implementing the conspiracy, and even signed the February 28, 2013 Agreement/Order

on behalf of the Board. (Defendants' MTD Brief Exhibit A, p.9). *See JTC Petroleum Co. v.*

*Piasa Motor Fuels, Inc.*, 190 F.3d 775, 779 (7th Cir. 1999) (discussing different roles of

conspirators and explaining that they "would be culpable under elementary principles of both

conspiracy law and agency law"); *see also United Broth. Of Carpenters and Joiners of Am.,*

*Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 827 (1983) (elements of conspiracy met where "one

or more" conspirators do or cause to be done "any act in furtherance of the object of such

conspiracy"). Thus, Petrie sufficiently alleged that Dr. Harp participated in Defendants' antitrust

conspiracy.

**CONCLUSION**

    Defendants' motion seeks stays or dismissals based upon two abstention arguments that

don't apply to federal antitrust claims, one limited immunity argument that isn't applicable here,

and an assertion that Petrie has not alleged a conspiracy, even though the relevant agreements

and conduct are substantially public. These arguments fail, for the reasons described above. Dr.

Yvoune Kara Petrie, D.C. thus respectfully requests that this Court reject Defendants' motion to

dismiss in its entirety.

In any event, each of Defendants' arguments address only a limited portion of this case or the relief sought. Defendants' abstention arguments and immunity arguments, for example, only apply to some of the conduct Petrie alleges. Meanwhile, Defendants do not dispute Petrie's tort claims at all. Thus, regardless of how this Court resolves the issues in Defendants' motion to dismiss, the case should survive in some form. So many of the issues that Defendants address—like permissible remedies—can be decided later in the proceedings, with a full-factual record.

Dated: March 4, 2104

Respectfully submitted,

**DR. YVOUNE KARA PETRIE, DC**

   /s/ Vincent M. Amberly
Vincent M. Amberly, Esq. (VA 48050)
AMBERLY LAW
129 Harrison Street, NE
Leesburg, VA 20176
Tel: 703-737-3545   Fax: 703-991-0770
Email: vinceamberly@yahoo.com

*Attorney for Plaintiff*
*Dr. Yvoune Kara Petrie, DC.*

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th of March 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Erin L. Barrett (VSB No. 74928)
Office of the Virginia Attorney General
Health Services Section
900 East Main Street
Richmond, Virginia 23219
(804) 786-1840
(804) 371-8718 (fax)
ebarrett@oag.state.va.us

/s/ *Vincent M. Amberly*
Vincent M. Amberly (VA 48050)
AMBERLY LAW
129 Harrison Street, NE
Leesburg, VA 20176
Tel: 703-737-3545   Fax: 703-991-0770
Email: vinceamberly@yahoo.com

*Attorney for Plaintiff*
*Dr. Yvoune Kara Petrie, DC.*