IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| YVOUNE KARA PETRIE, D.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-1486 |
| | ) | |
| VIRGINIA BOARD OF MEDICINE, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF**
**<u>MOTION TO DISMISS</u>**

Under Petrie's theory of this case, making any claim under federal antitrust law creates a litigation freight train which no legal theory can stop. That is simply not true. The doctrines of *Younger* abstention, *Burford* abstention, and quasi-judicial immunity apply to the instant claims. Petrie has not adequately alleged facts that create federal jurisdiction. She cannot merely cite to federal antitrust law and plow forward with an improper case.

Petrie's claims are a collateral attack of the order of a state administrative body. Her request for relief alone demonstrates this. Petrie asks this Court to "set aside" the state administrative Order sanctioning her license. (*See* Am. Compl. at 47.) She asks this Court to render the terms of the Order and the sanction imposed by the Board completely ineffective. (*Id.*) She asks this Court to "enjoin" the Board from regulating her license as a chiropractor. (*See* Am. Compl. at 48.) She claims that Board interpretation of statutes governing the professions it regulates in a manner that limits the practice of chiropractic to the definition of the practice of

1

chiropractic[1] impedes her ability to practice as a chiropractor. (*See* Am. Compl. at ¶ 112.) She further misunderstands Virginia statutory law – and agency policy, which mirrors the law – which requires the Board to post disciplinary information and claims that required action adds to her injuries. (*See* Defendants' Memorandum in Support of Motion to Dismiss, Docket No. 18 at 4.) Everything Petrie cites to as an alleged injury is an action properly taken by the Board against her license or an action performed by the Board at the behest of the Virginia General Assembly. Insisting that these issues make up an antitrust claim is a blatant attempt to force a federal court to interfere in an ongoing state issue. Instead of accepting the validity of the state regulatory system that regulates her license, Petrie insists that action taken against her by the Board must have been the result of some illegal action. She refuses to entertain the possibility that she acted outside of the statutory scope of the practice of chiropractic.

Using Petrie's method here, any licensee sanctioned by the Board can simultaneously appeal the Board decision through state court and make empty allegations in federal court in the hopes that at least one venue will overturn the Board decision. Petrie insists that her claims are unique, narrow, and require federal jurisdiction. Yet her response fails to address the basic deficiencies in her Amended Complaint.[2]

## I.  Petrie failed to adequately plead a combination, conspiracy, or agreement.

If read literally, Section 1 of the Sherman Act would prohibit all concerted activity in restraint of trade. 15 U.S.C. § 1 ("[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign

---

[1] Under Virginia law, the Board is entitled to deference regarding its interpretation of the basic laws governing its agency. *Jackson v. W.*, 419 S.E.2d 385, 390, 14 Va. App. 391, 401 (Va. Ct. App. 1992).

[2] Petrie asserts that the Defendants believe Petrie's allegations are "rock-solid" (*see* Response, Docket No. 27, at 2 ("Resp.")) and that any of her claims which are not addressed by Defendants in their Motion to Dismiss are claims that the Defendants "do not dispute." (*See* Resp. at 17.) The Defendants make no such concessions or claims. This brief is part of a series related to a Motion to Dismiss filed pursuant to Rule 12 to assert certain defenses by motion. Fed. R. Civ. Pro. 12(b). It is not considered the full responsive pleading by the Defendants to Petrie's Amended Complaint and cannot be viewed as such under Federal Rules.

nations, is declared to be illegal"). However, the Supreme Court has long held that "the legality of an agreement or regulation cannot be determined by so simple a test, as whether it restrains competition. Every agreement concerning trade, every regulation of trade, restrains." *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918). Therefore, the question is whether the restraint restricts competition unreasonably. *Standard Oil Co. v. United States*, 221 U.S. 1, 58 (1911).

When pleading a Section 1 agreement, a plaintiff must meet the pleading standards for an agreement established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), where the Supreme Court observed that "stating . . . a [Section 1] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. By insisting that a complaint allege "plausible grounds to infer an agreement," the *Twombly* standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of an *illegal* agreement." *Id.* (emphasis added). The plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to determine whether a complaint alleges enough "factual content" to support a "reasonable inference" that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("*Iqbal*").

Certainly the Board members agreed to sanction Petrie, but that kind of agreement is exactly the type that is explicitly called for within the statutes setting up the Board, its appointees, and its duties. Va. Code §§ 54.1-2400, -2915. It is not an illegal agreement that restrains competition unreasonably under the *Standard Oil* test, since protecting a state's citizens from the unauthorized practice of medicine is absolutely a reasonable restriction on the number of people who can compete to provide medical services to the public.

3

Further, as previously noted in the Defendants' Motion to Dismiss, Petrie has not pled facts to show that there was a combination, conspiracy, or agreement to harm chiropractors. An agreement among the Board members to sanction a specific chiropractor cannot be transformed, without more specific facts alleged, into a conspiracy by the Board to keep all chiropractors in Virginia from competing with medical doctors in the market for medical services. Petrie tries to amplify the agreement to sanction her into an agreement to restrain trade in the market for certain medical services by noting that the Board members are not only horizontal competitors to each other, but also "competitors or potential competitors" with her. However, unless the Virginia General Assembly amends the statute defining the practice of medicine and requires the Board to promulgate new regulations specifying the requirements to practice medicine, there is no agreement to restrain trade in that market here since Petrie does not compete with medical doctors for the provision of those services.

Finally, Petrie argues that she has shown direct evidence of a conspiracy and cites to *North Carolina State Bd. of Dental Examiners v. Federal Trade Comm'n*, 717 F.3d 359, 373 (4th Cir. 2013) ("*Dental Examiners*"). That case is distinguishable from the situation here. Unlike teeth whitening, which is the subject of the problematic restraint in the *Dental Examiners* case and is not addressed by the North Carolina legislature, the practice of medicine in Virginia is clearly articulated by statute. Therefore, in sanctioning Petrie for practicing medicine without a license, the Board here was not acting outside of its direct statutory mandate.[3] This further illustrates how the agreement by the Board members to sanction Petrie could not have been an "illegal" agreement within the meaning of Section 1 of the Sherman Act. *See* 15 U.S.C. § 1.

---

[3] Compare the action of the Board here with the action of the North Carolina board, which initiated an investigation – led by elected board members – into the practice of teeth whitening by individuals not licensed by the North Carolina Board of Dental Examiners in any capacity. *Dental Examiners*, 717 F.3d at 365. The North Carolina board acted outside of its statutory authority by pursuing individuals not licensed by the board. *Id.* at 364. That factual scenario is not comparable to the situation here, and does not support Petrie's allegations.

To survive a motion to dismiss, a complaint must have sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In cases where a defendant is arguably immune from suit, a plaintiff must allege sufficient facts to show that the immunity does not apply. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256-60 (4th Cir. 2009) (analyzing whether the plaintiff provided sufficient facts to establish that the defendant did not enjoy immunity under the Communications Decency Act). Here, Petrie has not satisfied this test. She attempts to use the Sherman Act as a shield against all potential jurisdictional defenses Defendants present, yet fails to adequately allege the requisite elements of an antitrust claim.

## II. *Younger* abstention applies because Petrie's inadequate claims do not create federal jurisdiction.

Petrie presumes that her allegations create mandated federal jurisdiction and preclude any application of an abstention doctrine in deference to the state court appeal which Petrie herself is pursuing. Because Petrie has not adequately pled facts that support an antitrust claim, her declaration that *Younger* abstention cannot apply to her claims is incorrect.

Without the assumed protection of the Sherman Act, Petrie has not alleged any facts that defeat the application of *Younger*. The actual relief requested from this Court – that the Court overturn the Board Order and remove any sanctions, terms, and fines imposed by the Board – can also be achieved by an appeal under the Virginia Administrative Process Act, Virginia Code § 2.2-4000 *et seq*. State courts have reversed board orders and portions of board orders on appeal when an appellant has demonstrated that one of the grounds for appeal under Virginia Code § 2.2-4027 justifies such action. *See Goad v. Virginia Bd. of Medicine*, 580 S.E.2d 494, 40 Va. App. 621 (Va. Ct. App. 2003) (reversing and remanding Board decision due to lack of substantial evidence); *Fetta v. Virginia Bd. of Medicine*, 20 Va. Cir. 334 (Va. Cir. Ct. 1990) (in

light of procedural errors, case was remanded to the Board with instructions to dismiss present proceedings and not institute further proceedings based on allegations of misconduct in appealed from case).

Petrie has relied entirely on her invocation of the Sherman Act to allow her to relitigate issues heard by the Board in her administrative hearing. She does not dispute that many of her allegations seek to have another tribunal hear factual issues related to her scope of practice and unprofessional conduct as defined under Virginia law, all of which was heard and adjudicated in an evidentiary hearing before the Board. Because Petrie has not properly alleged an antitrust claim, her complaint creates parallel adjudicatory procedures in state and federal court reviewing identical facts.

### III.    *Burford* abstention applies because federal jurisdiction is not mandated.

Petrie's inadequate allegations under the Sherman Act do not protect her claims against *Burford* abstention. In fact, Petrie entirely failed to address the applicability of *Burford* abstention to her claims. (*See* Supp. at 13-14.) Where only one *Burford* criteria is required for abstention, here the Defendants have demonstrated that *both* apply. *See Johnson v. Collins Entertainment Co.*, 199 F.3d 710, 719 (4th Cir. 1999) (citations omitted).[4]

Additionally, Petrie understates the effect her demands of this Court will have on the state system of regulation of the health professions. Petrie asserts that her claims are narrow because they "challenge the ability" of a group of alleged competitors to "implement agreements" to affect the actions of certain individuals. (*See* Supp. at 14.) The "agreements" alluded to, however, are Board Orders. Those Board Orders sanction and discipline licensees of the Board. Thus, Petrie is attacking the ability of the Board to issue orders sanctioning its

---

[4] Petrie claims that Defendants have "sensibly" not asserted state-action immunity in their Motion to Dismiss. (*See* Supp. at 13.) Defendants have not waived this doctrine.

6

licensees; in effect, Petrie is attacking the Board's ability to regulate the professions which the Virginia General Assembly orders it to regulate, and further attacking the remaining Defendants' ability to perform their duties as required under statute.

Petrie inexplicably declares that cases "that involve violations of existing law or standards within a profession" would be unaffected by her claims. (*See* Supplement to Response, Docket No. 27-1, at 14 ("Supp.").) Petrie does not explain who determines the standards governing any given profession in the Commonwealth if it is not the body selected by the Virginia General Assembly. Presumably, Petrie wishes only chiropractors to regulate other chiropractors. But again, that is an issue which Petrie must address at the state legislative level. Attempting to obliterate the administrative system in Virginia will not accomplish her alleged goals and will vastly impact a complex state system.

**IV.    Quasi-judicial immunity applies to the Defendants.**

The Fourth Circuit has not adopted the distinction Petrie makes between defendants sued in their individual capacity versus official capacity. Reliance on the Eighth Circuit's distinction in that regard is misplaced. Rather, the Fourth Circuit has clearly stated that Board members possess absolute immunity when performing their quasi-judicial adjudicatory functions as Board members.

In *Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999), the Fourth Circuit found that "[e]very court of appeals that has addressed the issue has concluded that members of a state medical disciplinary board are entitled to absolute quasi-judicial immunity for performing judicial or prosecutorial functions." *Id.* at 249 (citing *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 65-67 (5th Cir. 1997); *Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698, 701 (1st Cir. 1995); *Watts v. Burkhart*, 978 F.2d 269, 272-78 (6th Cir. 1992) (en banc);

*Bettencourt v. Board of Registration in Medicine*, 904 F.2d 772, 782-84 (1st Cir. 1990); *Horowitz v. State Bd. of Medical Exam'rs*, 822 F.2d 1508, 1512-16 (10th Cir. 1987)).[5] Petrie has presented no reason for this Court to ignore Fourth Circuit precedent and ignore the Defendants' adjudicatory action that led to Petrie's claims.

Petrie further alleges that she sued the Board member and Board staff Defendants in their individual capacity "because they are competitors or potential competitors that combined to restrain trade." (*See* Supp. at 17.) The selective inclusion of *only* the Board members sitting on the panel that determined Petrie acted outside the scope of her practice is telling. If she were truly concerned about alleged "competitors" on the Board, she would have named all such members of the Board. Yet she chose only to select certain members of the panel that sanctioned her. Petrie's pursuit of only the panel members adjudicating the claims against Petrie speaks volumes about Petrie's intent with the instant suit.

Petrie does not dispute that the Board members and staff were acting in their quasi-judicial capacity in conducting an administrative hearing regarding Petrie's actions. Permitting Petrie's suit to continue despite her inadequate allegations and clear targeting of the Board for performing its mandated public service merely ensures that future licensees sanctioned by the Board will file groundless federal suits in hopes of receiving additional compensation.

## IV.  CONCLUSION

For the foregoing reasons, the Defendants ask the Court to dismiss all claims against them with prejudice.

---

[5] Although Petrie claims that quasi-judicial immunity is not applicable where injunctive relief is requested (*see* Supp. at 15), Petrie in practice is asking the Court to compensate her for the Board's legal sanction of her license. As mentioned above, she is asking the Court to provide the equivalent of restitution for what she believes is a wrong against her. (*See* Am. Compl. at 48.) Additionally, the relief Petrie requests could hardly be described as "injunctive." She instead asks that an entire system of regulation be modified for her benefit, and the request for relief that the Board be enjoined from "interfering" with Petrie's practice (*see* Am. Compl. at 48) is so nebulous as to not be practical, whether cast as injunctive relief or damages. Petrie's characterization of her damages claim should not be allowed to block a legitimate claim for quasi-judicial immunity.

Respectfully submitted,

THE VIRGINIA BOARD OF MEDICINE
RANDOLPH CLEMENTS, DPM
KAMLESH DAVE, MD
SIOBHAN DUNNAVANT, MD
WILLIAM L. HARP, MD
JANE PINESS, MD
WAYNE REYNOLDS, DO


By: ___/s/ Erin L. Barrett_____
Erin L. Barrett (VSB No. 74928)
Counsel for Defendants
Office of the Virginia Attorney General
Health Services Section
900 East Main Street
Richmond, Virginia 23219
(804) 786-1840
(804) 371-8718 (fax)
ebarrett@oag.state.va.us

The Honorable Mark R. Herring
Attorney General of Virginia

Cynthia V. Bailey
Deputy Attorney General

Allyson K. Tysinger
Senior Assistant Attorney General

Sarah O. Allen*
Erin L. Barrett* (VSB No. 74928)
Assistant Attorneys General
(804) 786-1840
(804) 371-8718 (fax)

*Counsel of Record*

# CERTIFICATE OF SERVICE

I certify that on this 7th day of March, 2014, I will electronically file a copy of this Reply in Support of Motion to Dismiss with the Court's ECF system, which will send a copy of this Memorandum to the following attorney:

        Vincent M. Amberly, Esq.
        Amberly Law
        129 Harrison Street, NE
        Leesburg, Virginia 20176
        Telephone: (703) 737-3545
        Fax: (703) 991-0770
        Email: vince@amberlylaw.com
        *Counsel for Plaintiff*

          /s/ Erin L. Barrett
        Erin L. Barrett (VSB No. 74928)
        Counsel for Defendants
        Office of the Virginia Attorney General
        Health Services Section
        900 East Main Street
        Richmond, Virginia 23219
        (804) 786-1840
        (804) 371-8718 (fax)
        ebarrett@oag.state.va.us