# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| YVOUNE KARA PETRI, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:13-cv-01486 |
| VIRGINIA BOARD OF MEDICINE, et al. | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendants' Randolph Clements, Kamlesh Dave, Siohan Dunnavant, William Harp, Jane Piness, Wayne Reynolds, and Virginia Board of Medicine (collectively "Defendants") Motion in Limine to Exclude the Expert Testimony of David Edelberg, MD and Stephanie J. Chaney, DC. Defendants are members of the Board, sued in their individual capacity as competitors with chiropractors in Virginia and in their capacity as members of the Board, as well as the Board itself. Plaintiff Yvoune Petri ("Petri" or "Plaintiff"), is a Doctor of Chiropractic. Plaintiff's Complaint alleges the Defendants entered an agreement to allocate the relevant service markets and exclude chiropractors

in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, as well as intentional interference with existing contracts, prospective contracts, and prospective economic advantage in violation of Virginia state law.

Plaintiff has been a licensed chiropractor in Virginia since 2006, practicing in Vienna, Virginia.  In her practice, she incorporates complementary and alternative medicine, functional neurology, and functional medicine in order to address underlying health issues such as neuropathy, autoimmune conditions, Type 2 diabetes, and thyroid conditions.  Defendant Virginia Board of Medicine was established by the Commonwealth of Virginia to regulate all forms of medicine, including chiropractic.

In February 2013, the Board conducted a formal hearing and determined that Petrie was in violation of various sections of the Virginia Code regulating the practice of medicine.  Specifically, Defendants found that Plaintiff advertised and promoted her services in a manner that was false and misleading by holding herself out as a nutritionist able to "reverse" Type 2 diabetes and treat thyroid and metabolic disorders; holding herself out as a registered dietician and nutritionist without meeting the criteria set forth in Virginia law; and acting outside of the scope of chiropractic by offering diet and nutrition counseling, ordering blood, saliva, and urine

testing, and performing procedures with a laser, all beyond the scope of chiropractic under Virginia law. The Board voted to sanction Petrie by suspending her license to practice chiropractic for six months and imposing a $25,000 fine. Plaintiff has appealed this decision to the Virginia Court of Appeals.

In addition to her appeal of the sanction, Plaintiff has brought suit in this Court alleging the Board's actions violated federal antitrust law as well as Virginia law. Count I alleges that the Defendants entered an agreement to allocate the relevant service markets to medical doctors and excluded chiropractors, including Plaintiff, from competing in those markets in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Additionally, Counts II, III, and IV allege intentional interference with existing contracts, prospective contracts, and prospective economic advantage, respectively, in violation of Virginia state law. These claims are based on Defendants alleged conduct that interfered in numerous ways, like anticompetitive conduct, improper communication with third parties that contract with Plaintiff, and improper publication of the sanction. Plaintiff requests that this Court set aside the Board's Order against her as an unlawful restraint on interstate trade and commerce and enjoin Defendants from limiting the scope of chiropractic practice beyond the

limitations under Virginia law. Plaintiff further seeks damages to be determined for the interference claims and treble damages for the anticompetitive conduct.

In support of her claims, Plaintiff has submitted expert reports for Dr. David Edelberg and Dr. Stephanie Chaney. Required under Federal Rule of Civil Procedure 26(a)(2), an expert report is a complete statement of all opinions a witness will express at trial. Defendants filed a motion in limine to exclude the testimony of these two expert witnesses.

A motion in limine allows the trial court to rule in advance of trial on the admissibility and relevance of anticipated evidence, including expert testimony. Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The court's ruling on the motion is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." Id. at 41. The party offering the expert witness, in this case Plaintiff, has the burden of showing, by a preponderance of the evidence, that the expert's testimony is admissible. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. In order to be admissible, the Court must determine whether the expert's testimony "rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 580 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (holding that the Daubert "gatekeeping" obligation to determine relevance and reliability applies to all forms of expert testimony). The purpose of this inquiry is to ensure that an expert's testimony is not speculative. Daubert, 509 U.S. at 590. Further, all irrelevant evidence is simply inadmissible. Fed. R. Evid. 403.

Evidence is relevant if it has any tendency to make any fact consequential to the outcome more or less probable. Fed. R. Evid. 401. "The threshold for relevancy is relatively low." United States v. Powers, 59 F.3d 1460, 1465 (4th Cir. 1995). To satisfy the relevance standard, "evidence need only be 'worth consideration by the jury,' or have a 'plus value.'" United States v. Leftenant, 341 F.3d 338, 346 (4th Cir. 2003) (quoting United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997)). Expert testimony, however, "which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591. There must be a "valid . .

connection between the expert's testimony and the pertinent inquiry before the court as a precondition to admissibility." Garlinger v. Hardee's Food Sys., Inc., 16 F. App'x 232, 235 (4th Cir. 2001).

The expert reports submitted on behalf of Dr. Edelberg and Dr. Chaney show that their testimonies are not relevant for determining any issues at hand or material facts. The second prong of the *Daubert* inquiry, the reliability of the testimony, need not be addressed.

The expert report of Dr. Edelberg, entitled "Highlights in the Restraint of Trade History of US Medicine," focuses on the historical relationship between conventional medicine and nonconventional alternatives, such as chiropractic. For the most part, this relationship has been marked by conventional medicine's attempt to "exercise its dominance by suppressing practitioners who are, for want of a better term, unconventional." The report details the efforts of medical boards and the American Medical Association (AMA) to "contain and eliminate" chiropractic. Conventional medicine, the report explains, feels threatened because "chiropractors were and are now considered serious financial competition." In regards to Dr. Petri's sanction, Dr. Edelberg states that the members of the Board have "absolutely no training in chiropractic medicine" and "[n]o chiropractor can expect fair judgment in atmosphere

(sic) where she's being reviewed not by peers but by her competition."

The expert report of Dr. Chaney focuses on the generally broad scope of chiropractic. First, the report describes the basic nature of chiropractic, as well as the training and accreditation necessary to become a Doctor of Chiropractic (DC). Next, the report explains the connection between chiropractic and pharmacology and the necessity for DCs to have training in this area. In addition to pharmacology, DCs are trained to take and read radiographic studies as well as "blood, urine, saliva and stool tests." These skills are necessary so that the DC knows when to refer a patient to a specialist. The report goes on to describe the treatments generally within the scope of chiropractic in most states, including spinal adjustments, electric stimulation, non-ablative laser and light therapy, and dietary and hygienic interventions. The report states that diet and lifestyle interventions can effectively reverse diseases such as Type 2 Diabetes and "[t]he general public has the right to access to alternatives that work." Finally, the report states that "[m]ost boards regulating chiropractic in the U.S. are independently run by Governor-appointed Doctors of Chiropractic." The report does not discuss the scope of chiropractic specifically in Virginia nor how chiropractic is regulated in Virginia.

The testimonies of Dr. Edelberg and Dr. Chaney have no connection to Plaintiff's state law claims contained in Counts II, III, and IV. These claims allege that Defendants' actions intentionally interfered with Dr. Petri's existing contracts, prospective contracts, and prospective business. The prima facie case of intentional inference with existing contracts requires

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985). Similarly, the prima facie case for intentional interference with prospective contracts requires Plaintiff to show that "(1) it had a contract expectancy; (2) [Defendants] knew of the expectancy; (3) [Defendants] intentionally interfered with the expectancy; (4) [Defendants] used improper means or methods to interfere with the expectancy; and (5) [Plaintiff] suffered a loss as a result of [Defendants'] disruption of the contract expectancy." Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., 493 S.E.2d 375, 378 (Va. 1997). Finally, to establish a claim for tortious interference with a business or economic advantage, Plaintiff must show "(1) the existence of a business relationship or expectancy, with a probability of future

economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." Glass v. Glass, 321 S.E.2d 69, 77 (Va. 1984).

Dr. Chaney's testimony regarding the broad scope of chiropractic and the training required to become a Doctor of Chiropractic could in no way assist the trier of fact in resolving these interference claims.

Dr. Edelberg's testimony as to the history of conventional medicine attempting to contain and eliminate chiropractic or the inadequacy of a medical board that would view chiropractors as competition does not assist the trier of fact in deciding these claims. Outside of Dr. Edelberg's speculation that the Virginia Board of Medicine is part of a larger scheme by conventional medicine to harm unconventional competitors, his testimony does not provide any assistance in determining whether the actions of the Board were intentionally designed to interfere with Plaintiff's contracts or business expectancies. It is precisely this type of speculation that *Daubert* requires the trial court to exclude.

Neither expert will assist the trier of fact in determining any issue or make a fact consequential to the outcome of the

interference claims more or less probable. Therefore, the testimonies of Dr. Edelberg and Dr. Chaney are irrelevant as they relate to Counts II, III, and IV.

As to Plaintiff's claim under 15 U.S.C. § 1 contained in Count I, Section 1 of the Sherman Antitrust Act provides in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1. Plaintiff advances two theories to prove a violation of § 1: first, Defendants' conduct constituted a per se violation due to a horizontal agreement amongst competitors to allocate markets and exclude competitors from relevant service markets; or in the alternative, Defendants' conduct constituted a violation under the "Rule of Reason" analysis.

The Sherman Antitrust Act was designed to promote economic liberty and prohibits all agreements that are "unreasonably restrictive of competitive conditions." Standard Oil Co. v. United States, 221 U.S. 1, 58 (1911). A plaintiff asserting a claim for violation of § 1 must prove (1) that at least two persons were acting in concert, and (2) the restraint complained of constitutes an unreasonable restraint on interstate trade or commerce. Estate Const. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 220 (4th Cir. 1994). The court must analyze "the

competitive significance of the restraint" in order to determine whether the anticompetitive agreement unreasonably restrains competition. National Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 692 (1978). There are two ways to show that a restraint is unreasonable: by showing that the nature of the restraint is per se unreasonable, or by showing that the restraint is unreasonable under a more fact-specific, analytical approach known as the "Rule of Reason" analysis. Id.

Agreements that are per se unreasonable have such a "pernicious effect on competition and lack of any redeeming virtue" that they "are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." N. Pac. Ry. v. United States, 356 U.S. 1, 5 (1958). Thus, the focus in this determination is whether the effect and purpose of the practice "facially appears to be one that would always or almost always tend to restrict competition and decrease output." Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 19-20 (1979). Courts make "categorical judgments" that certain practices are illegal per se. Cont'l Airlines, Inc. v. United Airlines, Inc., 277 F.3d 499, 509 (4th Cir. 2002) (quoting Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284, 289 (1985)). Among the practices that have been held to be per se unreasonable are price fixing,

division of markets, group boycotts, and tying arrangements. Cont'l Airlines, Inc., 277 F.3d at 509.

When the impact of certain practices is not obvious, however, the Rule of Reason analysis is appropriate. FTC v. Indiana Fed'n of Dentists, 476 U.S. 447, 458-59. Under this approach, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 49 (1977). The court will consider several factors, "including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997).

Dr. Edelberg's testimony does not provide any assistance in determining whether Defendants have violated 5 U.S.C. § 1. At issue is not whether conventional medicine has historically attempted to eliminate chiropractic but whether this restraint imposed on Dr. Petri is reasonable. Even accepting as true Dr. Edelberg's history between conventional and nonconventional medicine, his testimony would not assist the trier of fact in determining the reasonableness of the restraint, the only relevant inquiry. Dr. Edelberg's testimony does not speak to the nature of the restraint not help establish the standard of

reasonable and would not assist in either the per se unreasonable analysis nor the Rule of Reason analysis. His testimony does not relate to any issue in the case and is therefore not relevant.

Dr. Chaney's testimony is similarly unhelpful in this inquiry. Her testimony regarding the general scope of chiropractic throughout the United States would not help resolve the issue of whether the restraint was reasonable. Her testimony is better suited to be heard by the Virginia Legislature regarding the proper scope of chiropractic in Virginia rather than in this case on the reasonableness of the restraint on Dr. Petri.

Neither testimony will assist the trier of fact in resolving the claims brought under the Sherman Antitrust Act and are therefore irrelevant as to Count I. The motion in limine should be granted and the testimonies of Dr. Edelberg and Dr. Chaney excluded. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October 23, 2014