IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| YVOUNE KARA PETRI, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:13-cv-01486 |
| VIRGINIA BOARD OF MEDICINE, et al. | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' Randolph Clements, Kamlesh Dave, Siohan Dunnavant, William Harp, Jane Piness, Wayne Reynolds, and Virginia Board of Medicine (collectively "Defendants") Motion for Summary Judgment. Defendants are members of the Board, sued in their individual capacity as competitors with chiropractors in Virginia and in their capacity as members of the Board, as well as the Board itself. Plaintiff Yvoune Petri ("Petri" or "Plaintiff") is a Doctor of Chiropractic. Plaintiff's Complaint alleges the Defendants entered an agreement to allocate the relevant service markets and exclude chiropractors in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, as well as intentional

interference with existing contracts, prospective contracts, and prospective economic advantage in violation of Virginia state law. Plaintiff concedes that the state tort claims are without merit. Accordingly, Defendants are entitled to summary judgment on Counts II, III, and IV.

Plaintiff has been a licensed chiropractor in Virginia since 2006, practicing in Vienna, Virginia. In her practice, she incorporates complementary and alternative medicine, functional neurology, and functional medicine in order to address underlying health issues such as neuropathy, autoimmune conditions, Type 2 diabetes, and thyroid conditions. Defendant Virginia Board of Medicine was established by the Commonwealth of Virginia to regulate all forms of medicine, including chiropractic.

In February 2013, the Board conducted a formal hearing and determined that Petrie was in violation of various sections of the Virginia Code regulating the practice of medicine. Specifically, Defendants found that Plaintiff advertised and promoted her services in a manner that was false and misleading by holding herself out as a nutritionist able to "reverse" Type 2 diabetes and treat thyroid and metabolic disorders; holding herself out as a registered dietician and nutritionist without meeting the criteria set forth in Virginia law; and acting outside of the scope of chiropractic by offering diet and

nutrition counseling, ordering blood, saliva, and urine testing, and performing procedures with a laser, all beyond the scope of chiropractic under Virginia law. The Board voted to sanction Petrie by suspending her license to practice chiropractic for six months and imposing a $25,000 fine. Plaintiff appealed this decision to the Virginia Court of Appeals, which upheld the sanction.

In addition to her appeal of the sanction, Plaintiff has brought suit in this Court alleging the Board's actions violated federal antitrust law. Count I alleges that the Defendants entered an agreement to allocate the relevant service markets to medical doctors and excluded chiropractors, including Plaintiff, from competing in those markets in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Plaintiff asks that this Court set aside the Board's Order against her as an unlawful restraint on interstate trade and commerce and enjoin Defendants from limiting the scope of chiropractic practice beyond the limitations under Virginia law. Plaintiff further seeks treble damages for anticompetitive conduct.

Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. This section has been interpreted to prohibit only unreasonable restraints on trade. Standard Oil Co. v. United States, 221 U.S. 1, 58

(1911). In proving that a restraint is unreasonable, a plaintiff cannot rely on their own economic injury but must show anticompetitive effects that caused harm to competition. Cont'l Airlines, Inc. v. United Airlines, Inc., 277 F.3d 499, 508, 515-16 (4th Cir. 2002) (quoting Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 338 (1990)). Further, a plaintiff must prove that at least two persons were acting in concert to restrain trade. Estate Const. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 220 (4th Cir. 1994)

To determine whether the anticompetitive agreement unreasonably restrains competition, the court must analyze "the competitive significance of the restraint." National Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 692 (1978). There are two ways to show that a restraint is unreasonable: by showing that the nature of the restraint is per se unreasonable, or by showing that the restraint is unreasonable under a more fact-specific, analytical approach known as the "Rule of Reason" analysis. Id.

Agreements that are per se unreasonable have such a "pernicious effect on competition and lack of any redeeming virtue" that they "are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." N. Pac. Ry. v. United States, 356 U.S. 1, 5 (1958).

Thus, the focus in this analysis is whether the effect and purpose of the practice "facially appears to be one that would always or almost always tend to restrict competition and decrease output." Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 19-20 (1979). Courts make "categorical judgments" that certain practices are illegal per se, such as price fixing, division of markets, group boycotts, and tying arrangements. Cont'l Airlines, Inc. v. United Airlines, Inc., 277 F.3d 499, 509 (4th Cir. 2002) (quoting Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284, 289 (1985)). "[T]he per se label should not be assigned without carefully considering substantial benefits and procompetitive justifications." Arizona v. Maricopa Cnty. Med. Soc., 457 U.S. 332, 364 (1982). And the Supreme Court has cautioned against condemning the rules of professional associations as per se unreasonable. F.T.C. v. Indiana Fed'n of Dentists, 476 U.S. 447, 458 (1986).

When the impact of a practice is not obvious the Rule of Reason analysis is appropriate. FTC v. Indiana Fed'n of Dentists, 476 U.S. 447, 458-59 (1986). This analysis presumptively applies and is generally preferred. See Texaco Inc. v. Dagher, 547 U.S. 1, 5 (2006). Under this approach, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing

an unreasonable restraint on competition." Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 49 (1977). The court will consider several factors, "including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997). The plaintiff must present sufficient evidence of anticompetitive effects within the relevant market. Oksanen v. Page Mem'l Hosp., 945 F.2d 696, 709 (4th Cir. 1991). The Court will also consider any procompetitive benefits that may justify the restraint. Chuck's Feed & Seed Co. v. Ralston Purina Co., 810 F.2d 1289, 1295 (4th Cir. 1987).

The court finds that the Rule of Reason analysis is the appropriate analysis to judge the reasonableness of the alleged restraint in this case. There is general reluctance to employ the per se unreasonable analysis when dealing with a professional association. Further, the per se unreasonable analysis should only be used to evaluate a restraint "if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. 877, 886-87 (2007).

Plaintiff has shown no anticompetitive effects on the relevant market, nor how the procompetitive benefits of the

Board's actions do not justify the potential anticompetitive effects. Plaintiff argues that the competition is harmed both by the harm to an individual competitor, as well the exertion of the Board's market power to exclude a competitor. Both arguments, however, state the same claim: Petri's individual injury constitutes harm to the overall competition. But the law is clear that "the elimination of a single competitor, standing alone, does not prove the anticompetitive effect necessary to establish antitrust injury." HCI Technologies, Inc. v. Avaya, Inc., 241 F. App'x 115, 123 (4th Cir. 2007) (quoting Military Servs. Realty, Inc. v. Realty Consultants of Virginia, 823 F.2d 829, 832 (4th Cir. 1987)). Petri has shown no evidence that pricing in the market was altered or that other chiropractors failed to join, or left, the market as a result of the Board's actions. Without such a showing, Plaintiff has failed to show the necessary anticompetitive effects of a Sherman Act violation.

While Plaintiff has made no showing of actual anticompetitive effects, she has also failed to show that the procompetitive benefits of the Board's actions are outweighed by those effects. Clearly, a state medical board's authority to monitor and regulate the practice of medicine, and sanction practitioners when necessary, is a market benefit not only for consumers, but for the many practitioners who are willing to

stay within the scope of practice created by the Virginia General Assembly. Without such a board, consumers would fall prey to untrained and dangerous practitioners, and well-trained and qualified professionals would lose business and see their profession demeaned. Plaintiff denies these benefits and urges the Court to find that the basic means to regulate the practice of medicine in Virginia in violation of federal antitrust law. The Court is not persuaded and does not reach this drastic conclusion. Accordingly, Defendants are entitled to summary judgment on Count I.

In addition to not showing any anticompetitive effects that outweigh the procompetitive benefits, Plaintiff has failed to show her antitrust standing to bring suit. The Clayton Act provides a private cause of action for violations of the Sherman Antitrust Act. 15 U.S.C. § 15(a). However, as in all cases, a plaintiff must have standing to bring a cause of action. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). For antitrust suits, a plaintiff must have antitrust standing, which is created by suffering an injury "of the type the antitrust laws were intended to prevent." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 477-78 (1977). An injury that creates standing "must reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation." Id. at 477-78. "It is competition, not

competitors, which the Act protects." Brown Shoe Co. v. United States, 370 U.S. 294, 344 (1962); see also Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 338 (1990). By not showing any anticompetitive effects Plaintiff has failed to show an injury to the competition and has merely pointed to her own injury as a competitor. Plaintiff has failed to show the antitrust injury necessary to bring this Complaint.

Finally, Plaintiff has failed to establish that the action by the Board and its members to sanction her constituted a conscious commitment to a common scheme by competitors to restrain trade. "Section 1 of the Sherman Act requires that there be a 'contract, combination . . . or conspiracy' between the [competitors] in order to establish a violation. Independent action is not proscribed." Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761 (1984) (internal citations removed). A plaintiff must present evidence that creates a reasonable inference of a conspiracy and may not rely on mere speculation. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 611 (4th Cir. 1985). The Defendant members of the Board each acted individually in their decision to vote in favor of Petri's sanction. Petri argues that the Board members had the opportunity to confer before voting to sanction her, and in that meeting, conspired against her. However, "the mere opportunity to conspire[ ] among antitrust defendants is

insufficient evidence from which to infer an anticompetitive conspiracy." Cooper v. Forsyth Cnty. Hosp. Auth., Inc., 789 F.2d 278, 281 (4th Cir. 1986). Plaintiff has failed to produce "evidence that tends to exclude the possibility of independent action." Monsanto Co., 465 U.S. at 768. Accordingly, Defendants are entitled to summary judgment on Count I.

For the aforementioned reasons, this Court finds that summary judgment should be granted in favor of the Defendant. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December 1, 2014